[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
PROCEDURAL BACKGROUND
This is an appeal by the plaintiff, Saab Cars USA, Inc. from a denial of it's application for a resubdivision by the defendant Planning Commission of the City of Meriden. Saab is the owner of a tract of land in the southeasterly section of the city of Meriden totaling 76 plus or minus acres of which 6 acres are located in the town of Wallingford and the balance in the city of Meriden. Saab acquired the property in 1986 and submitted a plan to the city of Meriden Planning Commission for approval of a headquarters complex including three separate buildings. That plan was approved under the Regional Development District ordinance of the city and shortly thereafter, Saab constructed a building containing a warehouse and office space.
Because of adverse economic conditions and changes, Saab abandoned the remainder of it's plan, and thereafter it applied to the Meriden Planning Commission for permission to divide the property into a parcel of 20.8 acres containing the warehouse and office facility, and a second parcel of 55.124 acres of vacant land. This subdivision application was approved by the town of Wallingford but denied by the city of Meriden. At the same time that Saab was applying for resubdivision it was also applying in a separate proceeding for a modification of its previously approved plan under the Regional Development Ordinance of the city. That application for modification of the previously approved plan was denied by the city and is the subject of a separate appeal which was heard by this court as a companion to the subdivision case and which bears docket no. CV930350716. It is the intention of the court to issue a separate memorandum of opinion relating to the site plan appeal.
AGGRIEVEMENT
The evidence at trial was uncontradicted that Saab is the CT Page 2155 owner of the property in question and owned such property throughout the proceeding. As such owner it has a specific legal interest in the subject matter of the appeal; and, therefore, the court finds Saab to be an aggrieved party with sufficient standing to maintain the appeal.
FACTUAL BACKGROUND
The Saab property in Meriden is zoned Regional Development District under the zoning ordinance of the city, 213-26.2 et seq. On February 22, 1986 the plaintiff received approval for it's site plan from the city for a 76 acre site for the development of an office building containing 108,000 square feet. A technical and training center of 68,000 square feet and a warehouse and distribution center consisting of 200,000 square feet of which 136,000 would be built initially and 64,000 would be held for expansion space. The proposal also contained 8,000 square feet of proposed office space.
Saab constructed the distribution center with 136,000 square feet of warehouse and 8,000 square feet of office space. Because of changes in the economic and business climate, Saab abandoned it's plan to construct the 108,000 square feet of office space and the 68,000 square foot training center on the site.
On January 26, 1993, Saab applied to the planning commission of Meriden to amend the approved site plan to eliminate the technical and training center and office building and to retain the distribution center with the existing 136,000 square feet of warehouse and 64,000 square feet of expansion space and to convert the 8,000 square feet of office space to warehouse space and to permit a new office and research space of 40,000 square feet. This application to amend the approved site plan is the subject of a companion appeal and the facts concerning the application are recited in this memorandum for background only.
On January 19, 1993, Saab applied to the inland wetlands and watercourse commission for approval with respect to its amended site plan.
Simultaneously with its request to amend the site plan, Saab applied to the planning commission to subdivide it's property into one parcel of 20.8 acres which would contain the aforesaid improvements and a second parcel of 55.124 acres of vacant land. While Wallingford approved the resubdivision, Meriden held a public CT Page 2156 hearing on the matter on April 14, 1993, which hearing was continued until May 12, 1993. On July 14, 1993 the defendant denied the plaintiff's application for resubdivision. Notice of this denial was duly published in the Meriden Record on July 21 and a timely appeal was taken.
In denying the proposed resubdivision the commission gave three reasons. These reasons are set forth in a certified letter to Saab Cars USA from James S. Fredericks, Jr., Chairman of the Commission, which letter is dated July 15, 1993. The question before the court is whether any of those three reasons supports the commission in its denial of Saab's application for resubdivision. The pertinent part of the letter reads as follows:
 "The planning commission denied this application for the following reasons:
 I. The commission have consistently contended that it is necessary for the applicant to amend the original (2/86) approved site plan prior to any resubdivision, to insure that all new lots are in full compliance with the RDD district. The (7/14/93) denial of the amended site plan and the stated reasons for such denial are thereby incorporated into this recommendation for denial of this resubdivision.
II. The application does not conform to 3.40 ("conformance with zoning"),
 A. Due to the denial (7/14/93) of the amended site plan, this proposed subdivision would split the site of the approved (2/86) Saab facility (three buildings) on 76 acres. The subdivision would isolate the distribution center (built) on a lot separate from the corporate headquarters building and the training center, thereby establishing the distribution center as the primary use (only use) of the proposed lot. This is a violation of 213-26.2C(1)(6) of the zoning regulation; -" Permitted Uses by Right" which requires a "distribution facility be combined with other permitted uses."
B. Also the approved site plan with the three CT Page 2157 buildings complies with the yard requirements of 213-26.2D(3) of the zoning regulations. This section restricts the use of the 60 foot setback areas to "access drives, natural features, landscaping, directional and identification signs and utilities." The proposed subdivision line will create a setback area which will include parts of the parking lot, which is a prohibited use of the required setback.
III. Section 3.53 of the subdivision regulations — utilities.
 The applicant has not submitted projected sanitary sewer discharge figures in a timely manner (July 13, 1993). Due to this delay, the staff has not has time to evaluate the impact of this proposal on the citywide sanitary system."
Notwithstanding the multiple buildings referred to in the approved site plan and in the proposed amended site plan, the only building which has occurred to date is 136,000 square feet of distribution facility and 8,000 square feet of office space suitable for either executive office or research and development. This structure is located on the 20.8 acres tract of the proposed resubdivision. Nothing has been constructed on the remaining 55.124 acres.
Neither side appears to cite any clear authority bearing on the essential point of dispute between the parties. There is no dispute that 3.40 of the Meriden subdivision regulation entitled "Compliance With Zoning" requires a subdivision plan to comply with the zoning ordinance and zoning map in effect on the date of the approval of the preliminary subdivision plan and the provisions of the general development plan adopted by the planning commission The real dispute between the parties in the instant case centers on the insistence of Saab that the zoning compliance evaluation should be made without regard to the previously approved site plan. Saab concedes that existing buildings must comply with zoning but denies that the proposed subdivision must comply with the mandates of what zoning would require if the site plan had been completed according its original to plan. Saab insists that to the extent that building has not occurred, the provisions of the approved site plan are irrelevant to a determination of whether or not the subdivision CT Page 2158 should be approved. Conversely, the town appears to take the position that zoning determinations should be made for the purpose of subdivision approval or disapproval, as if the site plan improvements had been built or at least zoning compliance should be determined with the view to what the approved site plan allows. It is axiomatic that subdivision approval requires zoning compliance. There is little question that an application for a residential subdivision in an area requiring 40,000 square foot lots and in which the subdivision plan showed 30,000 square foot lots would be denied, absent some special rule authorizing cluster zoning. The reason that the hypothetical residential subdivision be denied is because the proposed subdivision plan would fail to comply with the zoning ordinance and zoning map in effect. The court finds nothing in the Meriden subdivision regulations which require the proposed resubdivision to comply with the zoning implications of the previously approved site plan. It appears to the court that the city's position is that the approved site plan is the equivalent of constructed site improvements and therefore, the applicant must propose a resubdivision that is in accordance with the zoning implications of the site plan or in some manner have the site plan modified or withdrawn. The court finds no basis for this contention. In the instant case the court finds that each proposed lot conforms with the frontage and area requirements of the R.D.D. zone and that the existing building on the 20.8 acre parcel meets the bulk requirements, setback, height and coverage requirements of the zone. As the plaintiff concedes, once the resubdivision is approved, it may well have the effect of invalidating the earlier site plan. As the plaintiff points out this site plan has effectively been invalidating already by action of the inland wetlands commission. Finally plaintiff claims to have abandoned the plan in any event. In the present action, it is not the concern of the court whether the site plan continues to have viability but only whether the subdivision should have been approved.
The Appellate Court has summarized the role of the planning commission in approving a subdivision in Sowin Associates v. South Windsor, 23 Conn. App. 370 (1990) in the following language:
 "When a municipal planning commission considers the approval or disapproval of a subdivision plan, it is acting in an administrative capacity rather than in a legislative capacity [citations omitted]. The planning commission acting in its CT Page 2159 administrative capacity herein, has no discretion or choice but to approve a subdivision if it conforms to the regulations adopted for its guidance." Sowin at 374.
With regard to the three reasons given by the planning commission for the denial of the subdivision approval, the court holds that the local commission exceeded it's authority when it contended that it was necessary for the applicant to amend the original approved site plan prior to any resubdivision. Second, since the court does not agree with the commission that the existence of the site plan creates any additional zoning requirements unique to this application, the court finds that the proposed subdivision conforms to zoning and therefore, its disapproval for failure to conform to 3.40 of the local regulation is in error.
The court recognizes that the zoning regulations prohibit parking within 15 feet of a lot line and that a paper parking lot shown on the site plan may be located within 15 feet of the boundary line shown in the proposed subdivision. If the construction of the parking lot eventually occurs, the parking lot will be required, absent some change in the applicable regulations, to be 15 feet from the boundary line. However, the court is not convinced that the mere existence of the parking lot on a paper plan which has not been constructed creates an impermissible zoning violation that justifies a denial of the subdivision.
Finally, the court agrees with the plaintiff that while the projected sanitary discharge figures may be important to the issue of the amended site plan facing the court in the companion case, they are not determinative of plaintiff's right to approval or disapproval of the proposed resubdivision.
In conclusion, it is the holding of the court that the existence of an approved site plan and the denial of an amendment to that plan is wholly and totally irrelevant to the question of whether the subdivision should or should not be approved. The court recognizes that Saab has abandoned a project which was attractive to the town. The court further recognizes that many uses which may be made of the property in the future, and particularly the development of the 55 acre tract, may require site plan approval or other regulatory oversight. Stated in its simplest terms, the applicant owns 76 acres of which slightly over 20 contain improvements. The applicant proposes dividing its 76 CT Page 2160 acres into one 20 acre parcel and one parcel of approximately 55 acres. The improvements on the 20 acre parcel comply with the Meriden zoning. The creation of the 55 acre parcel comply with the Meriden zoning and with the Meriden subdivision regulations. The use of the 55 acre parcel is a matter to be decided at a future time when a specific proposal is presented.
In accordance with the provisions of 8-8L, the court after hearing, reverses the action of the defendant the City of Meriden Planning Commission and sustains the appeal. The court remands the matter to the commission with directions to approve the resubdivision as required by 8-8L. Costs are allowed against the board because the decision appealed from has been reversed.
The court by,
Kevin E. Booth, Judge